*0*

---

## WENDELL *v.* ABBOTT.

The use of a deposition on a former trial without objection is considered as a waiver of all merely technical objections, whether to the deposition itself or the caption.

Where there is evidence tending to show the admission by an agent of a material fact, and a question is raised as to the agent's authority to make the admission, if there is any evidence tending to show such authority, the whole question may be properly submitted to the jury with instructions to find first whether the agent was acting within the scope of his authority in making the admission, and, if so, to weigh the admission thus made against his principal, otherwise to lay it out of the case.

The declarations, not under oath, of disinterested men having means of knowledge and since deceased, on questions of monuments and boundaries of land, are competent as evidence of reputation; but such declarations in relation to acts of ownership or of possession of land, are not admissible, because such facts cannot be proved by reputation.

"A bog" or "boggy ground" may be so situated and surrounded as to be a good natural monument, so that a line running from a given monument by the southerly side of the boggy ground on the premises, to another given monument, would be well located and defined. But the nature of the soil may be such that it would be difficult to determine where the boggy land terminated, and the land not boggy commenced.

Hence, when a defendant in a writ of entry disclaims all north of a certain line, and pleads the general issue as to all south of it, and describes his line as commencing at a stake, &c., thence running westerly by the southerly side of the boggy ground on said premises to a stake, &c., the plea will not be bad on demurrer, because, for aught that appears in the plea, the line may be definitely located and fixed by such description.

But, upon proof that the southerly side of such boggy ground is a point in dispute, and not easily ascertainable with certainty, then upon motion the plea will be rejected and the defendant will be compelled to describe his line by some fixed and definite and visible monument; he will be compelled to set a stake at the place where he claims the southerly side of the boggy ground to be, and he must hold up to that line or lose his case.

In such an action the defendant's plea should so describe the line to which he claims, that, if the jury find for the defendant, their verdict may follow the words of the plea in describing the line, and yet establish a definite and certain boundary line.

WRIT OF ENTRY to recover a parcel of land situated in Springfield.

The defendant in his plea described a line commencing at the "Smith road on low ground and near boggy ground, about thirty-two rods northerly of the Stony Brook Road so-called, and thence running westerly by the southerly side of the boggy ground on the said premises about one hundred and thirty rods to a stake and stones standing at the northeast corner of Ezra Pillsbury's fifteen-acre-piece"—and disclaimed all the demanded premises situated north of said line, and pleaded the general issue as to the rest.

The plaintiff claimed that the north line of the Stony Brook Road was the south line of his lot, so that the land in dispute was a parcel bounded on the north by the line described in the defendant's plea, south by the north line of Stony Brook Road, east by the Smith Road, and west by the east line of the said Pillsbury lot.

Both parties claimed under John Wendell, the defendant being the owner of the east part of land sold from the south end of lot No. 8, called the bog lot, to James Hogg by John Wendell. The title passed successively through James Hogg, Charles Hogg, afterwards Charles Church, Moses Eastman, Samuel Eastman, John Page, Solomon Bartlett and John Bartlett to the defendant. The plaintiff claimed to own the portion of the lot directly north of the Hogg purchase, and the matter in dispute was the dividing line between the defendant's land and the portion of said bog lot directly adjoining it on the north.

The defendant offered the deposition of John Page, to which the plaintiff objected that the caption was insufficient because it did not show whether the plaintiff did or did not object. The caption stated that "the said Henry F. Wendell, being duly notified, was not present." It was further objected that the caption did not state that the notice to the plaintiff was annexed to it, the notice being in fact annexed and sufficient. These objections were overruled and the plaintiff excepted. The deposition had been used at a former trial of the case and it appears by the notes of the Judge before whom the trial was had, that these objections were not then taken.

Evidence was offered tending to show that one George W. Wendell acted as the general agent of John Wendell in the care, management and sale of all his lands in Springfield; the witness, who was a son of John, stating that he had never known any of the acts of George in such agency disavowed by John.

The seventeenth interrogatory and answer in the deposition of said Page were then read as follows, viz:

"*Int.* 17. State if Moses Eastman was at Church's when Wendell was there. State how you came to be there, and what you and Eastman were doing, and if you heard any conversation between said Eastman and Wendell about the north line of said Eastman's said farm. State what that conversation was."

"*Answer.* Moses Eastman and myself were at Church's in the fall of 1805, we were putting in rye on the farm Eastman had recently bought of Church. I heard conversation between Eastman and Wendell about the north line of the farm. Eastman inquired if there was any land, good for anything, between his land and the bog. George Wendell answered no, you may go as far north as you can and not get mired if you do not go across the brook."

To which evidence the plaintiff excepted.

There was evidence tending to show that Benjamin Colby, deceased, had been for many years a surveyor in that neighborhood, had been employed occasionally as the agent of John Wendell and his sons, Geo.

W. and Abraham, in the care of the land and to see that no trespasses were committed on plaintiff's lands, and who was well acquainted with the boundaries and corners of the lands of the different owners, and had owned and occupied for some years the Evans 15-acre-piece, originally part of this lot, and had aided a witness in running it out as a surveyor.

The defendant testified that said Benjamin Colby told him that the northwest corner of his land was the northeast corner of the Evans land, described in the plea as the corner of Pillsbury's land, and that Colby told him that certain large pine stumps on the land in dispute were cut by Moses Eastman, and that he assisted said Eastman in drawing off the trees. To the evidence about cutting and drawing off the trees the plaintiff excepted. Colby had this talk with defendant in A. D. 1853. The plaintiff also offered evidence tending to show that said Colby had declared that the north line of the Stony Brook Road was the true line.

The court was requested by plaintiff's counsel to instruct the jury that "an agent authorized to sell land and take pay therefor is not thereby authorized to bind his principal by admissions in regard to the boundaries of land sold by the principal and deeded before commencement of his agency."

The court declined so to instruct the jury, but did say to them, "that, at the time the conversation mentioned in said seventeenth answer was had, it appears that only a part of lot number eight had been sold to Hogg, and that was from the southerly part of it, and it would be competent for John Wendell or his agent to find the true line between what had been sold and what then remained. It was for the jury to find whether he was acting within the scope of his authority in making the admissions mentioned in said seventeenth interrogatory and answer, as to the true line between what had been sold to Hogg, and what was still unsold," and this part of the charge was not excepted to.

The defendant's counsel in the opening statement of the defence stated that he did not claim that the line described in the plea was a straight line, but that it was for the jury to find on the evidence the true line between the corners mentioned in the plea. In the course of the trial the defendant's counsel interrupted the plaintiff's counsel in the examination of a witness and renewed the statement that the defendant did not limit himself to a straight line but claimed such line as the jury should find corresponded with the description and the evidence. Afterwards, in the course of the trial, evidence was offered by the defendant which tended to show that in fact the line described in the plea would not vary materially from a straight line.

The court instructed the jury that if they found the two corners contended for by the defendant, the law would give a straight line between them unless they were satisfied by the evidence that the line should be different, as they might find where the low and boggy ground was, and that such line corresponding to such land was not straight. The jury might find a curve line if necessary to conform to low and boggy land.

The verdict returned by the jury was in these words, viz: "The jury are in favor of a verdict in favor of the defendant, and the establishing of a bound at the stake on the west side of the Smith road near Bog Brook and running a straight line westerly to the northeast corner of the Evans lot."

The corners described in said verdict are the same corners mentioned in the defendant's plea.

The verdict as reduced to form was as follows, viz: "In this action the jury find as to that portion of the demanded premises not disclaimed by the defendant, that the defendant did not disseize the plaintiff in manner and form as the plaintiff has thereof declared against him."

The plaintiff objects that the verdict as returned by the jury is against the weight of evidence, and furthermore, that the line found by the jury does not in fact give the defendant all the land claimed in his plea, and that therefore the verdict ought to have been a verdict for the plaintiff. The plaintiff also moves that the verdict be set aside by reason of the rulings above excepted to, and the refusal of the judge to instruct the jury as requested. The plaintiff also offered the affidavit of Harvey Huntoon, foreman of the jury, a copy of which is annexed, and makes part of the case. The affidavit having been shown to the defendant he objects that the affidavit is not material, and further, that it does not correctly state all that was said and done, and asks that if the court should deem these matters material the evidence may be taken on notice.

The following is the affidavit of Harvey Huntoon, foreman of the jury, which was duly subscribed and sworn to:

"I, Harvey Huntoon, of Unity, make oath and say: That at the Sept. Term of Court for Sullivan County, 1863, we served upon the jury in the trial of *Wendell* v. *Abbott*; that, upon a view of the premises in dispute made by the jury during the progress of said trial, the defendant and his counsel, Mr. Cushing and Mr. Morse, attended the view with the jury; that they did not show the jury the straight line "from the bound at the stake on the west side of the Smith road near Bog Brook and running a straight line westerly to the northeast corner of the Evans lot," as found by them to be the true line between the parties, as the line claimed by them—but showed the jury a line starting in a more northerly course from said stake by the Smith road and running northerly to Bog Brook and thence by said Brook and by the southerly side of the Main Bog and thence by a southwesterly course to the northeast corner of the Evans lot, making a large circle to the north of said straight line from stake near Smith road, to Evans corner, as the line claimed to by the defendant Abbott."

The questions of law thus arising were reserved.

*A. & S. H. Edes,* and *Wheeler,* for plaintiff.

*Cushing* and *Morse,* for defendant.

SARGENT, J.   The first objection, that to the caption of John Page's

deposition, cannot be sustained. Its use on a former trial without objection is considered as a waiver of all merely formal objections, whether to the deposition itself or to the caption. *Burnham* v. *Wood*, 8 N. H. 337 ; *Bartlett* v. *Hoyt*, 33 N. H. 162 ; *Reed* v. *Spaulding*, Sullivan Co. January Term, 1863. And where the minutes of the counsel differed or were silent upon the point, the minutes of the presiding judge before whom the former trial was had, would be held conclusive.

We think, after evidence had been introduced tending to show that George W. Wendell acted as the general agent of John Wendell, in the care, management and sale of all his lands in Springfield, and that John had never been known to disavow any of the acts of said George in such agency, that interrogatory seventeen and the answer to the same in John Page's deposition, in regard to said George's admission as to where the true line was between John Wendell, his principal, and Moses Eastman, which would be the line between the parties in this case, was properly admitted, with the instructions that were given to the jury on that point, as having some tendency to prove that the true line was then known and understood to be by John Wendell and his agent, where the defendant now claims it to be.

We think the evidence was properly introduced as tending to show an admission by one whom the jury might properly find, from the other evidence in the case, to have been authorized to make it in behalf of plaintiff's grantor in relation to this line. And the question as to the authority to make the admission was properly referred to the jury, who, if they found the agent in this matter was acting within the scope of his authority, would consider the testimony in relation to his admission, otherwise they would lay it out of the case.

The instructions requested were properly withheld, as there was no state of facts proved to which the ruling would apply, otherwise the instructions would have been given. If the testimony in this case had shown that the agent had only been authorized to sell land and take pay therefor, then the instructions asked might have been proper, but as the evidence tended to show more than that, it became immaterial what the rule might be in a state of facts that did not exist in this case.

The evidence shows that Benjamin Colby, deceased, had been conversant with the lands and bounds in the neighborhood, and his statement in regard to the bounds of this lot made to a third person during Colby's life, in relation to the northwest corner of defendant's lands, were received without objection. But the evidence went further than this, and defendant stated not only what Colby said about the bound, but that he also said that certain pine stumps on the land in dispute were cut by Moses Eastman and that said Colby assisted Eastman in drawing off the trees. This was admitted subject to plaintiff's exception. This was, no doubt, an important fact in its bearings on the case ; that Moses Eastman, the defendant's remote grantor, cleared the land in dispute many years ago ; that he was in possession performing acts of ownership of a public and notorious character, such as would have been likely to attract the notice of the true owner, if Eastman did not own it ; the fact that

said Eastman cut and removed these large and valuable pine trees in the presence, and by the assistance, of Colby, who had been, and perhaps then was, Wendell's agent to see that no trespasses were committed on his lands, would be important and perhaps vital for the defendant to prove. But being thus important, such fact, if proved at all, must be proved by competent testimony. But we know of no rule of evidence by which such facts can be proved by hearsay or by reputation. It is not claimed that Colby's statements were made as Wendell's agent, in a way to bind Wendell; and his statements in relation to these matters, not under oath even though since deceased, are clearly inadmissible. The evidence of reputation is confined to monuments and lines and boundaries, but does not extend to acts of ownership, or possession, or to any other facts necessary to make out the defendant's case. On this ground the verdict must be set aside.

As the pleadings stand, it was left to the jury to find not only which termini were the correct ones, but also to find where the defendant's line run between the termini. If they found the termini, as claimed by the defendant, to be correct, they might start northerly and go to Bog Brook, thence on the southerly side of the Main Bog, and thence southerly or southwesterly to the Evans corner, and making a large circle to the north of a straight line; or they might have gone anywhere between that line and a straight line or still further south than a straight line, wherever they should find "the southerly side of the boggy ground on said premises" to be. This was the issue tendered in the plea and joined by the plaintiff, and the verdict will not now be set aside because the jury found this line in one place rather than in another.

It would seem from all the facts disclosed in the case, that here it was not very certain where the southerly side of the boggy ground was located, or how far the boggy ground extended. And, although in some cases a bog or boggy ground may be so located and so surrounded as to be a good monument, and a line which should run by the southerly side of it would be as well defined and as easily and as certainly located as though it run to any other fixed monument, yet in other cases it might be difficult to fix the line that should divide the boggy ground from that which was not boggy; and it would seem that this was the fact here. But the defendant should locate the line to which he claims in such a way that it can be found and followed upon the land, and that if the jury find a verdict in his favor and establish the line in the words in which he has described it in his plea it would make a definite and distinct boundary upon the land. But here if the jury had found a verdict for the defendant, and established his line just as he had described it in his plea, it would have made nothing certain except the termini. The line might have varied any where between these termini, according to the opinion of different juries or different individuals as to the extent of the boggy ground. Here there may have been nothing appearing on the face of the plea that could necessarily make it bad on demurrer, because the boggy ground might be so well defined that a line running from a given monument by the southerly side of such boggy ground to another given monument might be as well traced and defined and as fixed and definite

as if the middle monument had been an oak tree, properly described. But this case falls clearly within the principle of *Wells* v. *Jackson Company*, 44 N. H. 61, where certain facts exist, which, when in connection with the plea, will make it impossible to frame a replication raising the issue intended to be tried upon the plea as filed, and where a motion might properly be made to reject the plea for that reason; which motion, upon the facts being shown, would be granted, and the defendant would be compelled to amend his plea by locating not only the termini, but the whole course of his line by well defined monuments. In other words, he would be compelled to set a stake where he claimed the southerly side of the boggy ground to be, and having thus definitely located his line he must stand or fall by the line thus chosen. Then a verdict for the defendant which should follow the line described in his plea and in the same words in which he has there described it, would be the fixing of a definite line and boundary, and would be a sufficient verdict.

If the defendant has doubts as to where his line is, he may locate it in such a way at least, as to make himself safe, if he chooses; but when he has located his line he must prove up to that line or lose his case. As the issue was joined in this case, the verdict may have been well enough, at least, it would hardly be set aside on that account, nor because it was against the evidence. But, as the verdict is to be set aside on another ground, the plaintiff may do well before another trial to be prepared to prove to the court, that "the southerly side of boggy ground" in this case is a very uncertain monument, which may be here or may be there, and, on motion to reject the plea, compel the defendant to locate "the southerly side of boggy ground" by setting a stake or stakes or some other fixed monument or monuments where he claims his line should go, so that a jury shall only be obliged, if they find a verdict for the defendant, to describe the line as the defendant describes it in his plea, which shall be a sufficient location of the line and an intelligible description of the same.

*New trial granted.*